IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY BRENT, et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-23-3254 |
| ADVANCED MEDICAL MANAGEMENT, LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Pending before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 19.) Plaintiffs seek, *inter alia*, the preliminary approval of the Settlement Agreement and the provisional certification of the Settlement Class. (*Id.*) For the reasons that follow, the Court will deny the Motion without prejudice. The Plaintiffs will be permitted to file a renewed motion, and the Court will reconsider Plaintiffs' requests upon the submission of such motion.

**I.  Background**

Plaintiffs Anthony Brent, Oluwakemi Ade-Fosudo, James Buechler, Desiree Walker, Confidence Dike, and Tyler Woerner, individually and on behalf of all similarly situated persons, brought claims against Defendants Advanced Medical Management, LLC ("AMM") and Points Group, LLC ("Points Group"). (*See generally* ECF No. 2; ECF No. 1, JKB-23-cv-1905.[1]) AMM provides operational, administrative, and technical healthcare management services to healthcare

---

[1] Plaintiff Woerner, who filed a separate federal suit as discussed in greater detail below, "joins in [the pending] Motion and is also a party to the Settlement Agreement, which resolves the claims asserted in both the Brent Action and the Woerner Action." (ECF No. 19-1 at 10 n.7.)

organizations. (ECF No. 1 ¶ 28.) Points Group provides strategy, consulting, and marketing services to businesses and healthcare providers, including AMM. (*Id.* ¶ 3.) Plaintiffs (and the class they seek to represent) were patients at AMM or AMM affiliates, and had provided AMM with various personal information. (*Id.* ¶ 30.) Due to a data breach, Plaintiffs' personal information was accessed by unauthorized third parties. (*Id.* ¶ 31.) The claims in this case arise from this unauthorized access, and Plaintiffs brought, *inter alia*, claims of negligence, breach of contract, and unjust enrichment. (*See generally id.*)

The procedural history of this case is somewhat complicated because there have been multiple related federal and state court cases that have been dismissed, consolidated, and removed to the Court. In short and as is relevant for purposes of the pending Motion, litigation relating to the claims in this case began in July 2023. (*See* ECF No. 19-1 at 9.) That month, Plaintiffs Ade-Fosudo, Buechler, Woerner, and Walker each filed cases in this Court and Plaintiff Brent filed an action in state court. (*Id.*) In August 2023, Plaintiffs Ade-Fosudo, Buechler, and Walker dismissed their federal actions and refiled in state court. (*Id.* at 10.) Plaintiff Woerner did not dismiss his federal court action, and it remains pending. (*Id.*) In October 2023, the state court granted a motion to consolidate the Ade-Fosudo, Buechler, and Walker cases into the Brent case. (*Id.*) On November 30, 2023, the consolidated Brent case was removed to this Court (and is the instant case). (*Id.*) Thus, the two remaining cases are the Woerner action and the consolidated Brent action.

This action has been stayed since December 6, 2023, approximately a week after it was removed to this Court. (*See* ECF No. 5 (December 6, 2023 Joint Motion requesting a stay).) The Woerner action, which was initially filed in this Court in July 2023, has been stayed since September 2023. (*See* ECF Nos. 10–21, JKB-23-cv-01905.) The Parties sought the stay to resolve certain procedural issues and to "focus their time and energy toward the upcoming mediation[.]"

2

(*Id.* at 3.) The Court granted the Motion. (ECF No. 6.) On February 5, 2024, the Parties reported that they participated in an all-day mediation on December 18, 2023, and had "reached an agreement in principle to settle at the Mediation and to fully and finally resolve all claims in this action and the *Woerner* action." (ECF No. 13 at 2.) They sought an additional stay, which the Court granted. (*See* ECF Nos. 13, 14.) The parties continued to seek—and be granted—stays. (*See* ECF Nos. 15–18.) The Plaintiffs thereafter filed the pending Motion. Thus, in short, little of substance has occurred on the dockets of these cases.

## II. Settlement Approval Procedure

Approval of a Federal Rule of Civil Procedure 23 class action settlement proceeds in two stages. At the first stage, the court examines the terms of the proposed settlement to determine whether it is "within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object." *CASA de Md., Inc. v. Arbor Realty Tr., Inc.*, Civ. No. DKC 21-1778, 2023 WL 6125531, at *4 (D. Md. Sept. 19, 2023) (citation and quotations omitted). Further, "[w]here a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Fed. R. Civ. P. 23(a) and at least one of the subsections of Fed. R. Civ. P. 23(b)." *Curry v. Money One Fed. Credit Union*, Civ. No. DKC-19-3467, 2021 WL 3212584, at *2 (D. Md. July 29, 2021) (citing Manual for Complex Litig. (Fourth) § 21.632). At the second stage, after a final fairness hearing, "[i]f the proponents of the settlement [] satisf[y] their burden of showing that it is fair, adequate and reasonable, then the Court will approve the settlement." *Grice v. PNC Mortg. Corp. of Am.*, Civ. No. PJM-97-3084, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (citation and quotations omitted).

## III. Class Certification

Plaintiffs propose the following Settlement Class: "all individuals who reside in the United

3

States who: (i) had private health information exposed in the Cyberattack involving Defendants; and (ii) [were] sent notification of the Cyberattack from AMM or was subject to the notice published in the media and on AMM's website." (ECF No. 19-1 at 12.) Plaintiffs estimate that there are 319,485 persons in the Settlement Class. (*Id.*) Plaintiffs seek the preliminary certification of the Settlement Class, and provide authority in support of their request. (*Id.* at 18–25.) The Court will deny Plaintiffs' request for provisional certification without prejudice.

### A. Legal Standard

Federal Rule of Civil Procedure 23 sets out the requirements for the certification of a class action. A plaintiff seeking class certification must establish that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. In addition, because Plaintiffs request certification under Rule 23(b)(3), they must demonstrate that "questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* 23(b)(3). These requirements are referred to as predominance and superiority. "A plaintiff seeking class certification bears the burden of proving the proposed class complies with the requirements of Rule 23." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011).

### B. Analysis

"The Rule 23 inquiry is certainly not meant to discourage settlement, but it is more than a rubber stamp[.]" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). The Supreme Court has explained that the "specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand *undiluted, even heightened,*

4

*attention in the settlement context.*" *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (emphasis added). Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* These considerations are particularly important here, where the case is still very much in its procedural infancy and there has been little opportunity for litigation.

Plaintiffs argue that class certification for settlement purposes is appropriate, and provide citation to authority pursuant to Rule 23. The Court would be inclined to agree with the Plaintiffs, on the basis of the information in the record regarding the Settlement Class and the claims it seeks to bring. However, in their briefing, Plaintiffs also note that "Settlement Class Counsel understands that AMM disputes that a litigation class could be certified in this action and, if this action were to proceed, AMM would vigorously oppose class certification on various grounds." (ECF No. 19-1 at 19.) Further, there are at least three statements in the Settlement Agreement itself that indicate that class certification is not appropriate. The Agreement notes that "Defendants [] deny that this case (or any case based on allegations related to the Cyberattack) satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23 or Maryland Rule of Civil Procedure 2–321." (ECF No. 19-2 ¶ 75.) It also provides that "Defendants contend that the Actions could not be certified as class actions under Federal Rule of Civil Procedure 23(b) (or Maryland Rule of Civil Procedure 2–321, if they had proceeded in Maryland state court) other than for settlement purposes." (*Id.* ¶ 82.) It also provides that "AMM . . . believes that a litigation class could not be certified." (*Id.* ¶ 166.)

Mindful of its role in the Rule 23 context and of the requirement that it must give "undiluted" and "even heightened attention" to class certification, the Court cannot preliminarily approve the Settlement Class at this juncture. The repeated comments by the Defendants regarding

5

the impropriety of class certification give the Court pause, and suggest that class certification may not be appropriate. The Court of course understands that Defendants seek to ensure that they do not waive any class certification arguments should the Settlement Agreement not be ultimately approved. However, these comments go far beyond what would be necessary to achieve that goal. Without a greater understanding of Defendants' concerns and why they are or are not supported by authority, and without the benefit of the adversarial process, the Court cannot provisionally certify the Settlement Class.

Therefore, the Court will deny without prejudice Plaintiffs' Motion to the extent that it seeks provisional certification of the Settlement Class. To the extent Plaintiffs renew their motion, they (or the Defendants) must provide additional color regarding Defendants' concerns and the reasons for which these concerns do not prevent the provisional approval of the Settlement Class.

## IV. Settlement Terms

Plaintiffs also seek the Court's preliminary approval of the Settlement Agreement. The Court will likewise deny that request without prejudice.

### A. Fairness, Reasonableness, and Adequacy

#### 1. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval" and Rule 23(e)(2) requires that the Court find that a proposed settlement is "fair, reasonable, and adequate." "The primary concern addressed by this requirement is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re: Lumber Liquidators Chinese-*

6

*Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).

In determining a settlement's fairness, the Court considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159). The focus of the fairness prong is "the procedural propriety" of the agreement. *Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC 11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (citation and quotations omitted).

In assessing the adequacy of a proposed settlement, the Court must consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). The focus of the adequacy prong is "the agreement's substantive propriety." *Edelen*, 2013 WL 3816986, at *8 (citations and quotations omitted).

The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022). However, it has "suggested that assessing whether a class settlement is 'reasonable' involves examining the

7

amount of the settlement." *Id.* (citing *Sharp Farms*, 917 F.3d at 303–04). "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, [] it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.*

### 2. Analysis

Here too the Plaintiffs fail to convince the Court that the Settlement Agreement should be preliminarily approved.

The Settlement Agreement establishes a $2,500,000 settlement fund. (ECF No. 19-2 ¶ 84.) The Agreement provides that those funds would be used to reimburse out-of-pocket costs up to $7,500 per Settlement Class member and to make *pro rata* cash payments. (*Id.* ¶ 136.) The Agreement also provides that AMM will implement substantial business practice changes and remedial measures to prevent unauthorized access to information within its systems. (*Id.* ¶¶ 87–88.) The estimated cost of those remedial measures is $500,000. (*Id.* ¶ 88.) Thus, the Agreement provides that the total Settlement Consideration is $3,000,000. (*Id.* ¶ 51.)

The Settlement Agreement provides that "Class Counsel will move for an award of their reasonable attorneys' fees incurred in the Action in an amount not to exceed thirty three percent[2] of the Settlement Consideration and for reimbursement of documented litigation costs and expenses in an amount not to exceed $50,000.00." (*Id.* ¶ 143.) It further provides that "Class Counsel will move the court for service awards to the Class Representatives of up to $2,500 each." (*Id.* ¶ 144.) It provides that "[a]ny award of attorneys' fees, costs, and expenses to Class Counsel, as well as Service Awards to Plaintiffs, shall be payable solely out of the Settlement Amount." (*Id.* ¶ 145.)

---

[2] The Court notes that the Plaintiffs' briefing suggests that Class Counsel will seek up to 33.3% of the $3,000,000 (ECF No. 19-1 at 16), but the Settlement Agreement itself provides that Class Counsel will seek up to 33% (ECF No. 19-2 at 35). The Court uses the figure provided in the Settlement Agreement.

Thus, by the Court's calculation, Class Counsel will seek an upper limit of $990,000 in attorneys fees,[3] $50,000 in litigation expenses, and $15,000 in service awards.[4] Because this will all be paid out of the $2,500,000 Settlement Fund, this would leave only $1,445,000[5] for the above-described *pro rata* payments and reimbursement of up to $7,500 out-of-pocket costs, for the Settlement Class, which Plaintiffs estimate exceeds 300,000 persons.

With respect to the Settlement Agreement's fairness, the Court again notes that this case is in its infancy. It was barely litigated before it went to mediation, and appears to have been very quickly resolved in that forum. While there appears to have been some exchange of information between the parties, there was no formal discovery in this case. Plaintiffs' briefing does not adequately explain why the Agreement is fair in light of these circumstances.

With respect to the Settlement Agreement's adequacy and reasonableness, at this very early stage of the case, it is difficult for the Court to assess the relative strength of the Plaintiffs' case or the existence of difficulties of proof or defenses, and Plaintiffs' briefing does not adequately address these issues.

Further, Plaintiffs do not adequately address how such a small pecuniary benefit is reasonable, and gloss over this fact in their briefing. As noted above, if Class Counsel seeks the upper limit of the amounts it suggests in its briefing, the Settlement Fund will amount to only $1,445,000 for a Settlement Class that Plaintiffs estimate is 319,485. Plaintiffs explain that this

---

[3] This represents 33% of $3,000,000. As noted, the Agreement specifies that Class Counsel will seek up to 33% of the "Settlement Consideration" (which includes both the $2,500,000 Settlement Fund and the estimated $500,000 of the remedial measures). The Court does not yet pass judgment on any request for attorneys' fees. However, given the procedural posture of this case and the benefit received by the Settlement Class, the Court notes that a request at the 33% upper limit (which would actually amount to a request for about 40% of the pecuniary benefit provided in the Agreement) would likely not be merited.

[4] There are six Class Representatives (Brent, Ade-Fosudo, Buechler, Walker, Dike, and Woerner) and they would seek up to $2,500 each.

[5] This figure does not take into account the settlement administration fees, so the amount available to the Settlement Class is in actuality even less than $1,445,000.

9

$1,445,000 is apparently intended to cover claims up to $7,500 for out-of-pocket costs plus *pro rata* payments. Without any explanation as to how it arrived at this figure, Plaintiffs explain that the *pro rata* payments are "estimated to be $50 per Class Member[.]" (ECF No. 19-2 ¶ 136.) It is not clear how that could be the case. Even assuming that no claimant seeks out-of-pocket costs, if each of the 319,485 Settlement Class members sought a *pro rata* payment, they would each get about $4.50. In short, Plaintiffs to not explain how "the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Banner Life Ins. Co.*, 28 F.4th at 527.

In making these observations, the Court does not suggest that the non-pecuniary benefits provided in the Settlement Argument would not be valuable to the Settlement Class. Those benefits may very well be of utmost importance to the Settlement Class. However, the Plaintiffs do not adequately grapple with the modest nature of the pecuniary benefit in their briefing and even go so far as to state that "it provides substantial and immediate economic consideration to the Settlement Class[.]" (ECF No. 19-2 at 15.)

Accordingly, the Court will deny without prejudice Plaintiffs' request for preliminary approval of the Agreement.

### B. Release Language

The Settlement Agreement purports to release the following claims:

> [A]ny and all claims, costs, damages, exposure, liability, and/or loss, direct or indirect, under any theory or cause of action at law or in equity, asserted or not asserted, known or unknown, arising from or in any way related to the Cyberattack under federal, state, foreign, or other law or regulation.

(ECF No. 19-2 ¶ 38.)

This release appears to be broader than permitted in the Fourth Circuit. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 22-1643, 2024 WL 174363, at * 6 (4th Cir. Jan. 17, 2024) (applying the "identical factual

10

predicate" doctrine and stating that "to authorize and approve a class settlement that seeks to settle materially distinct and non-litigated claims goes too far"); *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022) ("A court can approve a release of claims that share an 'identical factual predicate' with claims alleged in a case.").

The Plaintiffs' briefing on this point is inadequate. (*See* ECF No. 19-1 at 17 (explaining only that "[t]he release in this case is tailored to the claims that have been pled or could have been pled relating to the specific Cyberattack. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendants related to the Cyberattack.").) Thus, the parties must either revise the release or explain why it comports with Fourth Circuit precedent.

## V. Appointment of Class Counsel

In addition to the above-described requests, Plaintiffs sought various other relief from the Court, including the appointment of Class Counsel. (*See* ECF No. 19-1 at 31.)

Federal Rule of Civil Procedure 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and in so doing must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]

Plaintiffs seek the appointment seven attorneys from six law firms as Class Counsel: David K. Lietz (Milberg Coleman Bryson Phillips Grossman, PLLC), Kevin Laukaitis (Laukaitis Law LLC), Courtney Weiner (Law Office of Courtney Weiner PLLC), Mason Barney and Tyler Bean (Siri & Glimstad LLP), A. Brooke Murphy (Murphy Law Firm), and Ken Grunfeld (Kopelowitz Ostrow Ferguson Weiselberg Gilbert P.A.). (*See* ECF No. 19-1 at 31.) Plaintiffs do not provide sufficient information with respect to the Rule 23(g)(1)(A) factors for the Court to assess the

11

propriety of making such an appointment.

Should Plaintiffs renew their motion, they must more adequately address these factors, particularly given the large number of attorneys they seek to have appointed as Class Counsel.

## VI. Additional Requests

Plaintiffs make various additional requests of the Court in connection with their Motion. However, given the above-described shortcomings, the Court does not address those additional requests at this time.

## VII. Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion. The denial will be without prejudice, and Plaintiffs will be permitted to file a renewed motion, with briefing that addresses the above-described issues. The Court will also extend the stay in this case.

DATED this 6 day of May, 2024.

BY THE COURT:

_____
James K. Bredar
United States District Judge