IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY BRENT, et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-23-3254 |
| ADVANCED MEDICAL MANAGEMENT, LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pending before the Court is Plaintiffs' Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 29.) Plaintiffs seek the preliminary approval of the Settlement Agreement and the provisional certification of the Settlement Class, as well as other relief associated with the Settlement Agreement. (*Id.*) For the following reasons, Plaintiffs' Renewed Motion will be granted.

**I.  Factual and Procedural Background**

Named Plaintiffs Anthony Brent, Oluwakemi Ade-Fosudo, James Buechler, Desiree Walker, Confidence Dike, and Tyler Woerner, individually and on behalf of all similarly situated persons, brought claims against Defendants Advanced Medical Management, LLC ("AMM") and Points Group, LLC ("Points Group"). (*See generally* ECF No. 2; ECF No. 1, JKB-23-cv-1905.) AMM provides operational, administrative, and technical healthcare management services to healthcare organizations. (ECF No. 1 ¶ 28.) Points Group provides strategy, consulting, and marketing services to businesses and healthcare providers, including AMM. (*Id.* ¶ 3.) Plaintiffs (and the class they seek to represent) were patients at AMM or AMM affiliates, and had provided AMM with various items of personal information. (*Id.* ¶ 30.) Due to a data breach, Plaintiffs'

personal information was accessed by unauthorized third parties. (*Id.* ¶ 31.) The claims in this case arise from this unauthorized access, and Plaintiffs brought, *inter alia*, claims of negligence, breach of contract, and unjust enrichment. (*See generally id.*)

The procedural history of this case is somewhat complicated given the multiple related federal and state court cases that have been dismissed, consolidated, and removed to this Court. In short and as is relevant for purposes of the pending Motion, litigation relating to the claims in this case began in July 2023. (*See* ECF No. 29-1 at 8.) That month, Plaintiffs Ade-Fosudo, Buechler, Woerner, and Walker each filed cases in this Court and Plaintiff Brent filed an action in state court. (*Id.*) In August 2023, Plaintiffs Ade-Fosudo, Buechler, and Walker dismissed their federal actions and refiled in state court. (*Id.* at 9.) Plaintiff Woerner did not dismiss his federal court action, and it remains pending. (*Id.*) In October 2023, the state court granted a motion to consolidate the Ade-Fosudo, Buechler, and Walker cases into the Brent case. (*Id.*) On November 30, 2023, the consolidated Brent case—which is the instant case—was removed to this Court. (*Id.*) Thus, the two remaining cases are the Woerner action and the consolidated Brent action.[1]

This action has been stayed since December 6, 2023, approximately a week after it was removed to this Court. (*See* ECF No. 5.) The Woerner action—initially filed in this Court in July 2023—has been stayed since September 2023. (*See* ECF Nos. 10–21, JKB-23-cv-01905.) The Parties sought the stay to resolve certain procedural issues and to "focus their time and energy toward the upcoming mediation[.]" (*Id.* at 3.) The Court granted the Motion. (ECF No. 6.)

The Parties report that, before settlement negotiations, they exchanged informal discovery regarding the breach. (ECF No. 29-1 at 10; ECF No. 30 at 7, 10.) The Parties also report that they

---

[1] Plaintiff Woerner, who filed a separate federal suit as discussed in greater detail below, "joins in [the pending] Motion and is also a party to the Settlement Agreement, which resolves the claims asserted in both the Brent Action and the Woerner Action." (ECF No. 29-1 at 9 n.7.)

2

exchanged detailed mediation statements, and participated in a "full day, in-person mediation of this matter with the Hon. Diane M. Welsh." (ECF No. 29-1 at 11; *see also* ECF No. 29-2 (Declaration of Hon. Diane M. Welsh).)[2] Plaintiffs explain that "[a]fter multiple rounds of arms'-length negotiations that lasted well into the evening hours, the Parties were unable to reach a resolution" but that "Judge Welsh presented the Parties with a mediator's proposal, which Plaintiffs and AMM accepted." (ECF No. 29-11 at 11; *see also* ECF No. 30 at 7 (AMM explaining that "[t]he in-person, day-long mediation was hard-fought, and the negotiations were extensive").) On February 5, 2024, the Parties reported to the Court that they "reached an agreement in principle to settle at the Mediation and to fully and finally resolve all claims in this action and the *Woerner* action." (ECF No. 13 at 2.) The Parties continued negotiations, and finalized and signed the Settlement Agreement on April 18, 2024. (*See* ECF No. 29-1 at 11.)

On April 18, 2024, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. (ECF No. 19.) As described in more detail in the Court's Memorandum and Order denying that Motion, the Court found that it could not provisionally certify the Settlement Class, nor could it find that the settlement was fair, reasonable, or adequate based upon the inadequate briefing provided by the Plaintiffs. (*See generally* ECF Nos. 23, 24.) The Court permitted Plaintiffs to file a renewed motion. (*Id.*) Plaintiffs filed the currently pending Renewed Motion on June 7, 2024. (ECF No. 29.)

## II. Settlement Approval Procedure

Approval of a class action settlement under Federal Rule of Civil Procedure 23 proceeds in two stages. At the first stage, the court examines the terms of the proposed settlement to determine whether it is "within the range of possible approval, subject to further consideration at

---

[2] The Hon. Diane Welsh served as a Magistrate Judge in the U.S. District Court for the Eastern District of Pennsylvania from 1994 to 2005, and is a mediator and members of JAMS. (ECF No. 29-2.)

3

the final fairness hearing after interested parties have had an opportunity to object." *CASA de Md., Inc. v. Arbor Realty Tr., Inc.*, Civ. No. DKC-21-1778, 2023 WL 6125531, at *4 (D. Md. Sept. 19, 2023) (citation and quotations omitted). Further, "[w]here a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Fed. R. Civ. P. 23(a) and at least one of the subsections of Fed. R. Civ. P. 23(b)." *Curry v. Money One Fed. Credit Union*, Civ. No. DKC-19-3467, 2021 WL 3212584, at *2 (D. Md. July 29, 2021) (citation omitted). At the second stage, after a final fairness hearing, the Court approves the settlement if the proponents of the settlement satisfy their burden of showing that it is fair, adequate, and reasonable. *Id.*

### III. Class Certification

Plaintiffs propose the certification of the following Settlement Class: "all individuals who reside in the United States who: (i) had private health information exposed in the Cyberattack involving Defendants; and (ii) [were] sent notification of the Cyberattack from AMM or [were] subject to the notice published in the media and on AMM's website." (ECF No. 29-1 at 12.) Plaintiffs estimate that there are 319,485 persons in the Settlement Class. (*Id.*)

Federal Rule of Civil Procedure 23 sets out the requirements for the certification of a class action. "A plaintiff seeking class certification bears the burden of proving the proposed class complies with the requirements of Rule 23." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011). The Supreme Court has explained that the "specifications of [Rule 23]— those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The Court previously denied Plaintiffs' request for provisional certification of the Settlement Class, explaining that while it was "inclined to agree with the Plaintiffs" that class

4

certification was appropriate, the "repeated comments by the Defendants regarding the impropriety of class certification give the Court pause, and suggest that class certification may not be appropriate." (ECF No. 23 at 5–6.) Both Parties have provided additional briefing regarding this issue, and—for the reasons set forth below—the Court is now satisfied that certification of the Settlement Class is appropriate.

### A. Rule 23(a) Requirements

A plaintiff seeking class certification must establish that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to respectively as numerosity, commonality, typicality, and adequacy of representation.

Here, the numerosity requirement is readily satisfied, given that there are over 300,000 members in the proposed Settlement Class.

The commonality requirement is likewise satisfied. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation and quotation omitted). To satisfy this requirement, the claims "must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Courts often find that this requirement is satisfied in similar data breach class actions. *See, e.g., Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, Civ. No. JKB-16-3025, 2019 WL 3183651, at *3 (D. Md. July 15, 2019). The Court finds that this requirement is satisfied here, where common questions—which would generate common answers—include whether AMM had a legal duty to protect the Settlement Class Members' personal information and whether

5

AMM breached that duty. *See id.* (finding the commonality requirement satisfied where "[t]he common questions include (1) whether [the defendant's] data systems were breached; (2) if so, whether [the defendant] had a legal duty to adequately protect Settlement Class Members' personal information; (3) whether [the defendant] breached that legal duty; and (4) whether Plaintiffs and members of the class suffered injury as a result of [the defendant's] conduct or failure to act").

The typicality requirement is also satisfied. "The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citation and quotations omitted). In short, "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67. Here, the claims of the Named Plaintiffs are typical of those of the Settlement Class: they arise out of the same cyberattack and involve the same legal theories. *See, e.g., Hutton*, 2019 WL 3183651, at *3 ("Plaintiffs satisfy the typicality requirement because their claims arise from the same factual nexus and are based on the same legal theories as the claims of members of the Settlement Class. Like Plaintiffs, other Settlement Class members were subject to the alleged data breach and have suffered identity theft or fraud or remain at an imminent risk of future harm.").

The adequacy requirement is also satisfied. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The Court also assesses class counsel's competency under this prong. *See 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 524 (4th Cir. 2022). Here, the Court discerns no conflict of interest among the Settlement Class members. The Court therefore also finds that the designation of the Named Plaintiffs as Class Representatives is appropriate. Further the Court finds that proposed Class Counsel is competent, given their experience with class actions. (*See* ECF No. 29-4.)

## B. Rule 23(b) Requirements

In addition, because Plaintiffs request certification under Rule 23(b)(3), they must demonstrate that "questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." These requirements are referred to as predominance and superiority. To assess this, courts look to:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As is particularly relevant here, where a court is "[c]onfronted with a request for settlement-only class certification[,]" it "need not inquire whether the case, if tried, would present intractable management problems[]." *Amchem*, 521 U.S. at 620.

The Court finds that the Rule 23(b) requirements are satisfied. Here, "[t]he many common questions of fact and law that arise from the alleged data breach and [AMM's] alleged conduct predominate over any individualized issues." *Hutton*, 2019 WL 3183651, at *4. In short, "the common question[s]" regarding AMM's security measures and whether AMM owes Plaintiffs any duties in that regard "predominate[] over any individual issues because the putative class members all assert injury from the same action" or inaction. *Gray*, 444 F. App'x at 702.

Further, resolving this by class action is superior to other methods of resolution. Resolving this case—for this very large number of Plaintiffs—promotes judicial economy and is more efficient than a series of individual lawsuits.

## IV. Settlement Agreement

Plaintiffs also seek the Court's preliminary approval of the Settlement Agreement. The Settlement Agreement establishes a $2.5 million settlement fund, "which will be used to pay for

7

benefits to the Settlement Class, notice and administration costs, Plaintiffs' service awards, and attorneys' fees and costs." (ECF No. 29-1 at 11.) Class Members "shall have the opportunity to submit a claim for cash payments, including: (a) Pro Rata Cash Payments; and (b) reimbursement of Out-of-Pocket Costs up to $7,500.00 per claimant for documented out-of-pocket expenses and losses." (*Id.* at 12.) Further, the Settlement Agreement provides for AMM to institute remedial measures to prevent further unauthorized access to information. (*Id.*) It is estimated that the cost of such remedial measures is $500,000. (*Id.*)

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval" and Rule 23(e)(2) requires that the Court find that a proposed settlement is "fair, reasonable, and adequate." "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020). As noted above, the Court need only determine whether the Settlement Agreement is "within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object." *CASA de Md.*, 2023 WL 6125531, at *4 (citation and quotations omitted).

### A. Fairness

In determining a settlement's fairness, the Court considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the]

8

class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (quoting *Jiffy Lube*, 927 F.2d at 159). The focus of the fairness prong is "the procedural propriety" of the agreement. *Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC-11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (citation and quotations omitted).

The Court previously expressed concern regarding fairness, noting that the case "was barely litigated before it went to mediation, and appears to have been very quickly resolved in that forum" and that "Plaintiffs' briefing does not adequately explain why the Agreement is fair in light of these circumstances." (ECF No. 23 at 9.) The Court now finds that Plaintiffs have carried their burden of showing that Settlement Agreement is sufficiently fair as to merit preliminary approval.

Although the case was settled before formal discovery and before significant litigation had taken place, the Parties "completed an extensive investigation and exchanged information about the number of persons allegedly impacted by the Cyberattack, the types of [personal identifiable information] accessed in the Cyberattack, and AMM's investigation of, and response to, the Cyberattack." (ECF No. 29-1 at 32.) Further, both Plaintiffs and AMM report that the settlement negotiations were hard-fought and conducted at arms' length. (*Id.*; ECF No. 30 at 7.) Counsel are experienced in the area of class action litigation. (*See* ECF No. 29-4.) The settlement negotiations took place before a neutral mediator experienced in complex litigation, which further bolsters the Court's conclusion that the Settlement Agreement is fair.

### B. Adequacy and Reasonableness

The Court expressed serious concerns regarding the adequacy and reasonableness of the Settlement Agreement, explaining that it could not assess the "relative strength of the Plaintiffs' case or the existence of difficulties of proof or defenses" at this early stage of litigation and pointed

9

to the "small pecuniary benefit" to Class Members. (ECF No. 23 at 9.) The Court further noted that Plaintiffs' briefing did not adequately address those issues. (*Id.*) The Court now finds that Plaintiffs have met their burden of showing that the Settlement Agreement is sufficiently adequate and reasonable as to merit preliminary approval.

In assessing the adequacy of a proposed settlement, the Court must consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). The focus of the adequacy prong is "the agreement's substantive propriety." *Edelen*, 2013 WL 3816986, at *8 (citations and quotations omitted).

The Court finds that the relative strength of the Parties' cases and the existence of defenses and of difficulties of proof weigh in favor of preliminary approval. Plaintiffs point to the evolving nature of data breach litigation, and provide various case-dispositive defenses that AMM could raise, including "whether AMM has a duty to protect the sensitive information belonging to Plaintiffs and the Class and whether that duty was breached when this Data Breach occurred." (ECF No. 29-1 at 29; *see also* ECF No. 30 at 16 ("AMM's position is that the plaintiffs cannot establish that they were injured by the Cyberattack" and explaining that "[t]he plaintiffs have not come forward with any evidence of actual misuse of their private information or any actual damages they supposedly suffered").)

The Court also finds that the anticipated duration and expense of additional litigation also

10

weighs in favor of preliminary approval. This case is in its infancy, and a resolution could be years away should the case proceed. (*See* ECF No. 30 at 16 (AMM explaining that, if this case were not to settle, "the parties would have [] to engage in additional litigation regarding the proper forum for the dispute, brief preliminary motions and a motion to dismiss, complete fact and expert discovery, brief summary judgment and related Daubert motions, brief the plaintiffs' motion for class certification, prepare for trial, conduct a complex trial, and prosecute and defend appeals").)

The Court does not find that the solvency of AMM is at issue, and will assess the degree of opposition to the Settlement Agreement at the Final Approval Hearing. Therefore, the Court finds that the Settlement Agreement warrants preliminary approval, given its adequacy.

The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr.*, 28 F.4th at 527. However, it has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Id.* (citing *Sharp Farms*, 917 F.3d at 303–04). "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, [] it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.*

First, the Court finds that the non-pecuniary benefits of the Settlement Agreement may be very valuable to the Class Members. Second, Plaintiffs point to the cash value of several other data breach settlements, and—despite the relatively modest nature of the pecuniary award here—it exceeds that of many similar data breaches. In short, the Court finds the Settlement Agreement to be sufficiently reasonable and, this relief, in comparison to the likely costs, risks, and delay of trial and appeal, warrants the preliminary approval of the Settlement Agreement.

### C. Release Language

The Settlement Agreement purports to release the following claims:

> [A]ny and all claims, costs, damages, exposure, liability, and/or loss, direct or indirect, under any theory or cause of action at law or in equity, asserted or not

asserted, known or unknown, arising from or in any way related to the Cyberattack under federal, state, foreign, or other law or regulation.

(ECF No. 19-2 ¶ 38.) The Court previously directed the Parties to provide further briefing regarding whether this language comports with Fourth Circuit precedent. The Parties have provided such briefing. (ECF No. 29-1 at 41–42; ECF No. 30 at 17–21.)

The Court concludes that the release is proper, given that the Parties seek to release solely claims related to the Cyberattack. "A court can approve a release of claims that share an identical factual predicate with claims alleged in a case." *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022) (quotation omitted). Here, the proposed release is broad, but the Fourth Circuit has stated that approval of a broad release is appropriate where "nothing on the face of the release purports to apply to cases with a different factual predicate." *Id.* at 160–61; *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 22-1643, 2024 WL 174363, at * 6 (4th Cir. Jan. 17, 2024) (applying the "identical factual predicate" doctrine and stating that "to authorize and approve a class settlement that seeks to settle materially distinct and non-litigated claims goes too far"). As the Fourth Circuit explained in *McAdams*, once the Court determines that the release is limited to claims that share the same factual predicate, "[o]ur inquiry ends," and the court at this stage cannot "decide the outer limit of the release's scope" because "[t]o do so would be advisory." 26 F.4th at 160–61.

### V.  Notice to Class Members

Plaintiffs ask the Court to approve their proposed method of notifying Class Members. (ECF No. 29-1 at 34–35.) The Court will grant that request.

Rule 23(c)(2)(B) provides that:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the

action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the Parties propose providing notice to the Class Members via the Class Members' emails. (*See* ECF No. 29-3 at 24.) For any Class Members for whom AMM does not have an email address, and for those Class Members for whom emails are returned undeliverable, the Settlement Administrator will send a notice to the Class Member's last known address. (*Id.* at 24–25.) For any mail returned undeliverable, the Settlement Administrator will use publicly available information to attempt to resend notice. (*Id.* at 25.) The Court finds that this method of notification is appropriate. *See, e.g.*, *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail Notice to each class members' last known address was the best practicable and satisfied notice requirements). Further, the Court has reviewed the proposed notice (ECF No. 29-3, Ex. C) and concludes that it provides the information required under Rule 23(c)(2)(B). Accordingly, the Court will approve Plaintiffs' request with respect to the provision of notice to the Class Members.

## VI.  Appointment of Class Counsel

Plaintiffs also seek the appointment of Class Counsel. (ECF No. 29-1 at 35–36.) Federal Rule of Civil Procedure 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and in so doing must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]

Plaintiffs seek the appointment of David Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and Courtney L. Weiner of the Law Office of Courtney Weiner, PLLC. (ECF No. 29-1 at 36.) This request is far more reasonable than Plaintiffs' initial request to appoint seven

13

attorneys from six law firms as Class Counsel. (*See* ECF No. 19-1 at 31; *see also* ECF No. 23 at 11–12 (Court Memorandum and Order noting that Plaintiffs did not adequately explain why such a large number of attorneys should be appointed class counsel).) The Court has reviewed the Declaration filed by Mr. Lietz (ECF No. 29-4) and Plaintiffs' briefing (ECF No. 29-1 at 42–45) and concludes that the appointment of these two attorneys as class counsel is reasonable in consideration of the factors provided in Rule 23(g)(1).

### VII. Other Relief

Plaintiffs also seek the Court's approval of Angeion Group as the Settlement Administrator; for approval of procedures for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; to approve the use of a claim form; and to further stay this matter. The Court concludes that Plaintiffs' requests should be approved.

### VIII. Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion, and will set in further dates and deadlines in connection with the Final Approval Hearing in the Order that accompanies this Memorandum.

DATED this 25 day of June, 2024.

BY THE COURT:

_____
James K. Bredar
United States District Judge