## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTHONY BRENT, et al.,                          *

    Plaintiffs,                              *

    v.                                       *              **CIVIL NO. JKB-23-3254**

ADVANCED MEDICAL                                *
MANAGEMENT, LLC, et al.,
                                                *
    Defendants.
                                                *

    *    *    *    *    *    *    *    *    *    *    *    *

### MEMORANDUM

Pending before the Court are Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 36) and Plaintiffs' Motion for an Award of Attorneys' Fees and Litigation Costs and for a Service Award (ECF No. 35). The Court held a Fairness Hearing on December 11, 2024. For the reasons that follow, the Court will grant the Motion for Final Approval of Class Action Settlement, and will grant in part the Motion for an Award of Attorneys' Fees and Litigation Costs and for a Service Award.

### I.   Factual and Procedural Background

Named Plaintiffs Anthony Brent, Oluwakemi Ade-Fosudo, James Buechler, Desiree Walker, Confidence Dike, and Tyler Woerner, individually and on behalf of all similarly situated persons, brought claims against Defendants Advanced Medical Management, LLC ("AMM") and Points Group, LLC ("Points Group"). (*See generally* ECF No. 2; ECF No. 1, JKB-23-cv-1905.) AMM provides operational, administrative, and technical healthcare management services to healthcare organizations. (ECF No. 1 ¶ 28.) Points Group provides strategy, consulting, and marketing services to businesses and healthcare providers, including AMM. (*Id.* ¶ 3.) Plaintiffs (and the class they seek to represent) were patients at AMM or AMM affiliates, and had provided

AMM with various items of personal information. (*Id.* ¶ 30.) Due to a data breach, Plaintiffs' personal information was accessed by unauthorized third parties. (*Id.* ¶ 31.) The claims in this case arise from this unauthorized access, and Plaintiffs brought, *inter alia*, claims of negligence, breach of contract, and unjust enrichment. (*See generally id.*)

The procedural history of this case is somewhat complicated given the multiple related federal and state court cases that have been dismissed, consolidated, and removed to this Court. In short, and as is relevant for purposes of the pending Motion, litigation relating to the claims in this case began in July 2023. (*See* ECF No. 29-1 at 8.) That month, Plaintiffs Ade-Fosudo, Buechler, Woerner, and Walker each filed cases in this Court, and Plaintiff Brent filed an action in state court. (*Id.*) In August 2023, Plaintiffs Ade-Fosudo, Buechler, and Walker dismissed their federal actions and refiled in state court. (*Id.* at 9.) Plaintiff Woerner did not dismiss his federal court action, which remains pending. (*Id.*) In October 2023, the state court granted a motion to consolidate the Ade-Fosudo, Buechler, and Walker cases into the Brent case. (*Id.*) On November 30, 2023, the consolidated Brent case—which is the instant case—was removed to this Court. (*Id.*) Thus, the two remaining cases are the Woerner action and the consolidated Brent action.[1]

This action has been stayed since December 6, 2023, approximately a week after it was removed to this Court. The parties sought the stays to resolve certain procedural issues and to "focus their time and energy toward the upcoming mediation." (ECF No. 5 at 3.) The Court granted the Motion. (ECF No. 6.)

Before settlement negotiations, the parties exchanged informal discovery regarding the breach. (ECF No. 29-1 at 10; ECF No. 30 at 7, 10.) The parties also report that they exchanged

---

[1] The Woerner action—initially filed in this Court in July 2023—has been stayed since September 2023. (See ECF Nos. 10–21, JKB-23-cv-01905.) Plaintiff Woerner "is also a party to the Settlement Agreement, which resolves the claims asserted in both the Brent Action and the Woerner Action." (ECF No. 29-1 at 9 n.7.) The Court will therefore separately issue an order in the Woerner case closing it.

detailed mediation statements, and participated in a "full day, in-person mediation of this matter with the Hon. Diane M. Welsh." (ECF No. 29-1 at 11; *see also* ECF No. 29-2 (Declaration of Hon. Diane M. Welsh).)    Plaintiffs explain that "[a]fter multiple rounds of arms'-length negotiations that lasted well into the evening hours, the Parties were unable to reach a resolution," but that "Judge Welsh presented the Parties with a mediator's proposal, which Plaintiffs and AMM accepted." (ECF No. 29-11 at 11; *see also* ECF No. 30 at 7 (AMM explaining that "[t]he in-person, day-long mediation was hard-fought, and the negotiations were extensive").)

On February 5, 2024, the parties reported to the Court that they "reached an agreement in principle to settle at the Mediation and to fully and finally resolve all claims in this action and the *Woerner* action." (ECF No. 13 at 2.) They continued negotiations, and finalized and signed the Settlement Agreement on April 18, 2024. (*See* ECF No. 29-1 at 11.)

On April 18, 2024, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. (ECF No. 19.) As described in more detail in the Court's Memorandum and Order denying that Motion, the Court found that it could not provisionally certify the Settlement Class, nor could it find that the settlement was fair, reasonable, or adequate based upon the inadequate briefing provided by the Plaintiffs. (*See generally* ECF Nos. 23, 24.) The Court permitted Plaintiffs to file a renewed motion. (*Id.*) Plaintiffs did so on June 7, 2024. (ECF No. 29.) The Court granted that Motion, and set in the December 11, 2024 Fairness Hearing and other associated dates. (ECF Nos. 33–34.)

**II.    Motion for Final Approval of Class Action Settlement**

In their Motion for Final Approval of Class Action Settlement, Plaintiffs seek: (1) the final certification of the Settlement Class for settlement purposes; (2) the final appointment of the Class Representatives; (3) the final appointment of Class Counsel; (4) a finding that the Notice met the Rule 23(c)(2)(B) requirements; and (5) a finding that the terms of the Settlement Agreement are

fair, reasonable, and adequate. (*See generally* ECF No. 36.)

### A. Settlement Approval Procedure and Standards

Approval of a class action settlement under Federal Rule of Civil Procedure 23 proceeds in two stages. At the first stage, the court examines the terms of the proposed settlement to determine whether it is "within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object." *CASA de Md., Inc. v. Arbor Realty Tr., Inc.*, Civ. No. DKC-21-1778, 2023 WL 6125531, at *4 (D. Md. Sept. 19, 2023) (citation and quotation marks omitted). At the second stage, after a final fairness hearing, the Court approves the settlement if the proponents of the settlement satisfy their burden of showing that it is fair, adequate, and reasonable. *Id.* The Court has preliminarily approved the Settlement Agreement (ECF Nos. 33, 34) and has held a fairness hearing.

### B. Class Certification

Plaintiffs propose the certification of the following Settlement Class: "all individuals who reside in the United States who: (i) had private health information exposed in the Cyberattack involving Defendants; and (ii) [were] sent notification of the Cyberattack from AMM or [were] subject to the notice published in the media and on AMM's website." (ECF No. 36-1 at 11.) There are 308,560 individuals in the Settlement Class. (*Id.*) The Court previously provisionally certified this Settlement Class for settlement purposes. (ECF Nos. 33–34.)

Federal Rule of Civil Procedure 23 sets out the requirements for the certification of a class action. "A plaintiff seeking class certification bears the burden of proving the proposed class complies with the requirements of Rule 23." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011). The Supreme Court has explained that the "specifications of [Rule 23]— those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v.*

4

*Windsor*, 521 U.S. 591, 620 (1997).

In its prior Memorandum and Order preliminarily certifying the Settlement Class, the Court found that the Class satisfied the Rule 23(a) and Rule 23(b) requirements for certification. (*See* ECF No. 33 at 4–7; ECF No. 34 ¶ 1.)  The Court incorporates by reference that analysis, and concludes that nothing changes it.  The Court continues to find that the Settlement Class meets the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.  The Settlement Class will be finally certified.

### C.  Class Representatives and Class Counsel

The Court previously appointed Plaintiffs Brent, Ade-Fosudo, Buechler, Walker, Dike, and Woerner as Class Representatives, and appointed David Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and Courtney L. Weiner of the Law Office of Courtney Weiner, PLLC as Class Counsel. (*See* ECF No. 33 at 13–14; ECF No. 34 ¶ 3.)  The Court continues to find these appointments appropriate, and they will be maintained through the entry of final judgment.

### D.  Notice

Federal Rule of Civil Procedure 23(e)(1) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal."  In addition, Federal Rule of Civil Procedure 23(h)(1) states that "[n]otice of the motion [for an award of attorney fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).  Further, to satisfy due process, notice "must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present

their objections.'" *Id.* at 157–58 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). But such "[n]otice need not be perfect, and all class members do not have to actually receive notice in order to satisfy the requirements of Rule 23 and due process." *In re Mut. Funds Inv. Litig.*, Civ. No. 04-15863, 2011 WL 1102999, at *1 (D. Md. Mar. 23, 2011).

The Court previously approved the proposed notice. (ECF No. 33 at 12–13; ECF No. 34 ¶ 7.) Notice was provided in the manner approved by the Court, and proceeded as follows:

> On July 29, 2024, Angeion caused the Short Form Notice to be disseminated via email to the 8,060 Settlement Class Members who had valid email addresses on the Class List (the "Email Notice"). Of the 8,060 Email Notices sent, 7,466 were delivered and 594 could not be delivered. The 594 Settlement Class Members whose Email Notice could not be delivered all had a corresponding mailing address. On July 31, 2024, Angeion also caused the Short Form Notice to be mailed via the United States Postal Service ("USPS") first-class mail, postage prepaid, to 308,560 Settlement Class Members and re-mailed to forwarding addresses if returned undeliverable. Short Form Notices returned without a forwarding address were subjected to an address verification search ("skip trace") in an attempt to locate an updated address and, as a result, of the 68,508 Short Form Notices returned as undeliverable, 51,845 were re-mailed to updated addresses. As such, Angeion has reason to believe the Notice Plan reached a total of 302,689, or 98%, of the 308,560 unique records provided to it in AMM's Class List.

(ECF No. 36-1 at 14–15 (citations omitted).) In addition to this individualized notice, Angeion created a settlement website and established a toll-free help line. (*Id.* at 15.)

Plaintiffs explain that Angeion received 10,057 claim forms, which represents a claims rate of 3.27%. The Court finds the claims rate of 3.27% to be modest, although it compares favorably to those breach-related class actions cited by Plaintiffs.[2] The Court concludes that the notice efforts

---

[2] In particular, Plaintiffs cite *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018), explaining that the court there found "that a 1.8% claims rate reflects a positive reaction by the class." (ECF No. 36-2 at 7.) However, in that case, the court explained that "the response rate from the Class has been relatively low. Only about 1.8% of the Settlement Class Members have submitted claims. Plaintiffs represent that this percentage compares favorably to the claims rates of approximately 0.2% and 0.23% in the *In re Home Depot* and *In re Target* data-breach actions, respectively." *In re Anthem*, 327 F.R.D. at 321. The court went on to state that, "[u]nfortunately, despite [] extensive notice efforts, only 1.41 million Settlement Class Members out of the approximately 79.15 million Settlement Class Members, or about 1.8% of the total Class, have submitted claims. Nevertheless, the Court is convinced that the notice program provided the best notice that is practicable under the circumstances and complied with due process." *Id.* at 329. The Court, like the court in *In re Anthem*, finds the claims

6

were extensive and provided the best notice practicable under the circumstances. *See, e.g.*, *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. Apr. 17, 2014) (finding that a direct mail notice to each class members' last known address, and a second notice if the first was undeliverable, was the best approach practicable and satisfied notice requirements). This conclusion is bolstered by Angeion's representation that it believes that notice reached 98% of the Class. (*See* ECF No. 36-4 at 3 (Declaration from an Angeion project manager that "Angeion has reason to believe the Notice Plan reached a total of 302,689, or 98%, of the 308,560 unique records provided to it in AMM's Class List").)

The Court also finds that the content of the notice (ECF No. 36-3 at 9–15) adequately informed Class Members of the requisite items under Rule 23(c)(2), which requires that notice apprise class members of, *inter alia*, the nature of the action, the definition of the class, the claims and issues, and the fact that the court will exclude from the class any member who requests an exclusion.

### E. Settlement Agreement

The Settlement Agreement established a $2,500,000 non-reversionary Settlement Fund. (ECF No. 36-1 at 8.) The Fund will be used to "pay for benefits to the Settlement Class, notice and administration costs, Plaintiffs' Service Awards, and Attorneys' Fees and Expenses." (*Id.* at 8–9.) The benefits to the Settlement Class are: "(1) reimbursement for documented out-of-pocket losses up to $7,500.00; and (2) *pro rata* cash awards to each valid claimant." (*Id.* at 9.) The out-of-pocket costs can include, *inter alia*, costs incurred as a result of identity theft, and "it is estimated that the pro rata payments will be between $121.00 to $152.00 per Settlement Class Member who submitted a valid claim." (*Id.* at 11, 24.) The Settlement Agreement "also provides

---

rate to be somewhat underwhelming, but ultimately concludes that the notice here was the best notice practicable under the circumstances.

Non-Monetary Relief to the Settlement Class in the form of enhancements to AMM's data systems, including those systems impacted by the Cyberattack. These enhancements are significant and have cost AMM more than $500,000.00[.]" (*Id.*)

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval," and Rule 23(e)(2) requires that the Court find that a proposed settlement is "fair, reasonable, and adequate." "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).

The Court preliminarily approved the Settlement Agreement (ECF No. 33 at 7–12; ECF No. 34 ¶ 2), and now finds that it should be finally approved, given that it meets the fairness, reasonableness, and adequacy requirements of Rule 23.

In determining a settlement's fairness, the Court considers: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (quoting *Jiffy Lube*, 927 F.2d at 159). The focus of the fairness prong is "the procedural propriety" of the agreement. *Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC-

8

11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (citation and quotation marks omitted).

While the first element—the posture of the case—does not necessarily weigh in favor of the final approval of the settlement, the remaining factors do. This case was barely litigated before it went to mediation, and was then quickly resolved in that forum. However, the parties engaged in extensive investigation and informal discovery. (*See, e.g.*, ECF No. 36-2 at 4 (Declaration explaining that Plaintiffs obtained informal discovery from AMM on various topics).) Counsel are experienced in the area of class action litigation. (*See* ECF No. 36-4 at 1–2.) And nothing in the circumstances surrounding the Settlement Agreement was the product of anything other than hard-fought, arm's-length negotiations. (*See* ECF No. 36-2 at 4–5 (describing the mediation process, including that mediation was before the Honorable Diane M. Welsh).) The Court finds that the Settlement Agreement is fair.

In assessing the adequacy of a proposed settlement, the Court must consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). The focus of the adequacy prong is "the agreement's substantive propriety." *Edelen*, 2013 WL 3816986, at *8 (citations and quotation marks omitted). The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022). However, it has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Id.*

(citing *Sharp Farms*, 917 F.3d at 303–04). "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, . . . it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *Id.*

The Court analyzed each of these factors in detail in its Memorandum preliminarily approving the Settlement Agreement. (*See* ECF No. 33 at 9–11.) Nothing causes the Court to revisit that analysis, and the Court incorporates it by reference. Further, the parties have now provided more information that strengthens the Court's conclusion that the Settlement Agreement continues to be adequate and reasonable. First, Plaintiffs provide more detailed information about the pecuniary benefit for each Settlement Class member who submitted a claim, and this information reflects that those Class Members will receive a substantial *pro rata* payment between $121.00 and $152.00. (ECF No. 36-1 at 24.) This benefit is separate from the reimbursement of up to $7,500 for out-of-pocket losses, and from the remedial security measures estimated to be worth $500,000. (*Id.*) Second, the parties have now presented evidence regarding the degree of opposition to the Settlement Agreement. Plaintiffs explain that "as of November 8, 2024, out of the 308,560 Settlement Class Members who received notice, Angeion received only eight timely exclusion requests and *no* objection to the Settlement." (ECF No. 36-1 at 25.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *West v. Cont'l Auto., Inc.*, Civ. No. 16-00502-FDW-DSC, 2018 WL 1146642, at *6 (W.D.N.C. Feb. 5, 2018) (citation omitted); *see also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The fact that no class member objected supports final approval of the Settlement as fair, adequate, and reasonable.").

Based upon the foregoing, the Court will finally certify the Settlement Class; finally

10

appoint Brent, Buechler, Ade-Fosudo, Walker, Dike, and Woerner as Class Representatives; finally appoint David Lietz and Courtney Weiner as Class Counsel; find that the notice met the requirements of Rule 23; and finally approve the Settlement Agreement as fair, reasonable, and adequate.

## III.   Motion for Award of Attorneys' Fees and Litigation Costs and for a Service Award

Plaintiffs also seek an award of attorneys' fees and litigation costs and service awards for the named Plaintiffs. (ECF No. 35.)   Plaintiffs seek $750,000 in attorneys' fees; $25,273.37 in litigation costs; and $15,000 total for the named Plaintiffs,[3] to be divided equally among them. (*Id.*)   The Motion will be granted in part, and the Court will award $625,000 in attorneys' fees, $25,273.37 in litigation costs; and $15,000 in service awards.

### A.   Attorneys' Fees and Litigation Costs

In a class action, the court may award reasonable attorney's fees and nontaxable costs as authorized by law or by agreement.   Fed. R. Civ. P. 23(h).   The Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorneys' fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case."   *McAdams*, 26 F.4th at 162.   "Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check."   *Donaldson v. Primary Residential Mortg., Inc.*, Civ. No. ELH-19-1175, 2021 WL 2187013, at *8 (D. Md. May 28, 2021).   Accordingly, the Court will determine whether the requested amount is reasonable pursuant to the percentage-of-recovery method and confirm the reasonableness with a lodestar cross-check.

District courts in this circuit have analyzed the following seven factors in determining

---

[3] At the Fairness Hearing, Class Counsel advised the Court that its request for $12,500 was the product of a math error, and that they actually seek $15,000.   The Court finds that the parties' anticipated service awards of $2,500 for each Named Plaintiff is appropriate.   (*See* infra Section III.C.)

whether a requested percentage is reasonable: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013). Courts need not apply the factors in a "formulaic way" and may weigh the factors as appropriate for a particular case. *Id.*

Class Counsel seeks $750,000, which amounts to 30% of the Settlement Fund.[4]

**Results obtained.** The Court finds that the results obtained for the Settlement Class are good, given the Settlement Fund secured by Class Counsel and the remedial measures. Class Counsel point to the settlement amounts obtained in other data breach litigation, which confirms that the monetary amount provided in the Settlement Agreement provides a greater recovery per Class Member than other similar settlements. (*See* ECF No. 35-1 at 7.) In addition, the Court finds that the non-monetary remedial measures also represent a substantial benefit to the Settlement Class. *See In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) (suggesting that fee awards should be structured in a way that incentivizes "future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis"). Further, the Court has received no objections regarding the Settlement Agreement, which also indicates that the results achieved by Class Counsel are satisfactory to the Class.

**Quality, skill, and efficiency of the attorneys.** The Court had little opportunity to observe the quality and skill of Class Counsel, given that this case was stayed almost immediately upon filing, and essentially no litigation occurred in this Court. However, Class Counsel have

---

[4] It represents 25% of the total settlement consideration if the Court takes into account the non-pecuniary benefit to the class (i.e., the $500,000 remedial measures and the $2,500,000 fund). The Court finds that, in this case, the appropriate measure is the $2,500,000 fund, rather than the total $3,000,000 consideration.

many years of experience in consumer, data breach, and class action law, (ECF No. 36-2 at 1–2), and the Court does not doubt that Class Counsel's quality and skill provided them with the necessary tools to negotiate a favorable settlement.

**Risk of nonpayment.** "In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis." *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 762 (S.D.W. Va. 2009).

The Court does not find that Class Counsel undertook any unique risk here. In short, while "attorneys undertaking class actions bear substantial risks that the litigation will not result in payment[,] . . . [t]here is no evidence . . . that Class Counsel undertook greater risk in this case than in any other typical class action." *Jones*, 601 F. Supp. 2d at 762–63. Indeed, "the usual risks of nonpayment associated with class actions were largely dissipated once the parties entered settlement negotiations." *Id.* (ultimately reducing the award from 25% to 20%); *see also Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) (explaining that although "Counsel should be rewarded for the risks they incurred in accepting Plaintiffs' case, the Court finds that these risks were minimalized by early settlement," and reducing the fee award from 30% to 25% of the settlement fund). As the Court has previously explained, this case was initially filed in state court in July 2023, and was ultimately removed to this Court on November 30, 2023. The case was stayed on December 6, 2023, mere days after it was removed. The parties then had a one-day mediation on December 18, 2023, at which they reached a settlement in principle. The parties continued negotiations, and finalized and signed the Settlement Agreement on April 18, 2024. Thus, the Court finds that Class Counsel's risks were substantially mitigated by early

settlement.

**Objections.** No Class Members have objected, and only eight have opted out.

**Awards in similar cases.** A 30% recovery is typical in similar cases. *See, e.g.*, *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, Civ. No. JKB-16-3025, 2019 WL 3183651, at *7 (D. Md. July 15, 2019); *All. Ophthalmology, PLLC v. ECL Grp., LLC*, Civ. No. 22-296, 2024 WL 3203226, at *14 (M.D.N.C. June 27, 2024); *see also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 464 (D. Md. 2014) ("Attorneys' fees awarded under the 'percentage of recovery' method are generally between twenty-five (25) percent and thirty (30) percent of the fund.").

**Complexity and duration of the case.** "In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement, and the amount and nature of discovery." *Boyd*, 299 F.R.D. at 465 (citation omitted). As the Court has previously explained, this case has been short-lived. Further, the litigation has not been complex.[5]

Plaintiffs explain that "[t]hough this case settled at a relatively early stage, it did so only after voluntary dismissals, refiling in state court, the introduction of an additional defendant, and removal, all in discussions with Defendant AMM." (ECF No. 35-1 at 10.) The Court does not find that any of these events weigh in favor of finding that this case is of any exceptional complexity, as each of these events are relatively routine in any litigation. Plaintiffs also explain that "[t]he parties have engaged in extensive negotiations, culminating in an in-person mediation session with the Hon. Diane Welsh (Ret.) that lasted into the evening hours." (ECF No. 35-1 at

---

[5] The Court also finds that counsel's characterization of these cases' earlier procedural history as "long" (ECF No. 35-2 ¶ 5) is somewhat exaggerated. The data breach occurred in May 2023, various plaintiffs began filing suits in July 2023, they moved to consolidate these actions in September 2023 and filed their consolidated class action complaint in state court in October 2023, the case was removed to this court in November 2023, and they reach a settlement in principle by mid-December 2023. (*Id.* ¶¶ 5–20.) Thus, only about five months passed from the filing of the first state court action to the mediation at which this matter was settled in principle.

10.) While the Court does not discount the work that is required to prepare for effective settlement negotiations, that the parties were able to settle this matter in principle after a one-day mediation session weighs in favor of the Court's finding that the case is not particularly complex.

**Public policy.** "[I]n assessing the reasonableness of the requested attorneys' fees, the court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that vindicate rights that might otherwise go unprotected, and perpetuating the public perception that class action plaintiffs' lawyers are overcompensated for the work that they do." *Boyd*, 299 F.R.D. at 466. Here, while litigating data breach cases is undoubtedly important, a large award in this case could perpetuate the public perception that plaintiffs' lawyers are overcompensated, given how short-lived the litigation was.

**Lodestar cross-check.** "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Singleton*, 976 F. Supp. 2d at 688. "[W]here the lodestar fee is used as a mere cross-check' to the percentage method of determining reasonable attorneys' fees, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* (internal quotation marks and citation omitted).

Class Counsel reports that it has incurred $397,210.50 in fees.[6] Class Counsel initially did not append any details regarding this $397,210.50, and the Court therefore directed them to supplement the Motion. (ECF No. 38.) Counsel provided more detailed information regarding Class Counsel's hourly rates and time records. (*See generally* ECF No. 39.) Class Counsel reported that, in comparison to the $750,000 fee request, the $397,210.50 request results in a

---

[6] At the Fairness Hearing, Class Counsel reported that it has incurred more fees since the filing of its Motion for attorneys' fees. However, the Court references the figure provided in that Motion.

modest lodestar multiplier of 1.88. (ECF No. 35-1 at 11.)

Given that the lodestar is only being used as a cross-check here, Court will not exhaustively scrutinize the record to determine an exact lodestar amount. *See Sims v. BB&T Corp.*, Civ. No. 15- 732, 2019 WL 1993519, at \*2 (M.D.N.C. May 6, 2019) ("When the lodestar method is used only as a cross-check, however, courts need not exhaustively scrutinize the hours documented by counsel and the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." (citation and internal quotation marks omitted).) The Court concludes that the claimed lodestar is reasonable, based upon the Court's review of the record, including Class Counsel's hourly rates and the time records provided. The Court also notes that courts in this Circuit routinely approve lodestar multipliers that are much higher. *Kelly*, 2020 WL 434473, at \*7 ("The requested fee would result in a lodestar multiplier of 2.45—well within the range routinely approved in this Circuit."); *Jones*, 601 F. Supp. 2d at 766 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."); *Kruger*, 2016 WL 6769066, at \*5 (collecting cases reflecting lodestar multipliers of 2.5 to 8.9).

**Conclusion.** Given the foregoing—particularly the risks undertaken by counsel and the duration and complexity of the case—the Court concludes that a reduced fee award is reasonable in this case. Here, the reasonable fee award is 25% of the $2,500,000 Settlement Fund, or $625,000. This results in a lodestar multiplier of approximately 1.57.

### B. Costs and Expenses

Under Federal Rule of Civil Procedure 23(h), the Court may award reasonable costs. Costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Kelly*, 2020 WL 434473, at \*7 (citations and quotation marks

omitted). Expenses may include court costs, transcripts, travel, contractual personnel, photocopying, postal fees, telephone costs, and expert witness fees. *Id*; *see also Boyd*, 299 F.R.D. at 468 (approving expense request that included "filing fees, expert and mediation fees, travel costs, computer research, copies, and other miscellaneous costs," and concluding that these expenses were "reasonable and typical").

Counsel seeks the reimbursement of $25,273.37. (ECF No. 35-1 at 13.) This includes costs associated with research, filing fees, travel, and mediation fees. (*Id.*) The largest fee was for mediation ($19,172.50), and the second largest was for travel costs ($2,581.69). (ECF No. 35-2 at 11.) These costs are reasonable and typical in litigation.

### C. Service Award

"Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry*, 807 F.3d at 613 (quotation marks and citations omitted). "To determine whether an incentive payment is warranted, the court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Decohen v. Abbasi*, LLC, 299 F.R.D. 469, 483 (D. Md. 2014) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiffs seeks an award of $15,000 in total, to be divided equally among the five Named Plaintiffs ($2,500 each). As Plaintiffs report, "an empirical study published in 2006 suggests that the average award per class representative is about $16,000." (ECF No. 35-1 at 14.) Thus, the requested service award per Named Plaintiff is modest. The Court concludes that this is appropriate, and that the relatively low award is commensurate with the actions the Named Plaintiffs took in this case. (*See* ECF No. 35-2 at 12 ("Plaintiffs took active roles in the litigation,

17

including reviewing pleadings, staying in regular contact with Class Counsel about the status of the case, remaining informed about settlement discussions, being available for consultation during the mediation period, and reviewing and approving the settlement agreement.").)

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 36) will be granted, and Plaintiffs' Motion for an Award of Attorneys' Fees and Litigation Costs and for a Service Award (ECF No. 35) will be granted in part. It will be granted as to the requests for costs and service awards; it will be granted at a reduced amount as to the request for attorneys' fees. This case will be closed. A separate Order follows.

DATED this /3 day of December, 2024.

BY THE COURT:

James K. Bredar
United States District Judge